IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

**TASES MILLS, SR.,**

    Plaintiff,

vs.                                      Case No. 1:08cv165-MP/WCS

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    Defendant.

                                                       /

## REPORT AND RECOMMENDATION

This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D. LOC. R. 72.2(D). It is recommended that the decision of the Commissioner be affirmed.

**Procedural status of the case**

Plaintiff, Tases Mills, Sr., applied for supplemental security income benefits. Plaintiff was 56 years old at the time of the second administrative hearing, has a limited education, and has past relevant work as an auto mechanic. Plaintiff alleges disability due to degenerative spinal conditions causing back pain and depression.

There was an initial administrative hearing, R. 480-500, and a decision of the Administrative Law Judge, R. 45-52.  The Appeals Council granted review and remanded to "[o]btain additional evidence concerning the claimant's back impairment in order to complete the administrative record . . . [and] may include, if warranted and available, a consultative orthopedic examination and medical source statements about what the claimant can still do despite the impairment."  R. 87.  Updated treating source evidence "will also be obtained."  *Id.*  The ALJ was also to "[o]btain evidence from a medical expert to clarify the nature and severity of the claimant's back impairment . . . ."  *Id.*

A second administrative hearing was held on September 12, 2007.  R. 456-479.  This resulted in a second decision by the ALJ.  R. 19-30.  In that second opinion, the Administrative Law Judge determined at step 2 of the analysis that Plaintiff has the "severe" impairment of "back disorder."  R. 21.  He also determined that Plaintiff did not have a "severe" mental impairment of a pain disorder.  R. 22.  The ALJ ultimately determined that Plaintiff was not disabled.  R. 30.  Plaintiff contends that the ALJ erred by not finding at step 2 that in addition to the severe impairment of back disorder, he has the severe mental impairment of chronic pain and depression.  Doc. 19.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  <u>Bloodsworth v. Heckler</u>,

703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted).  The court must give "substantial deference to the Commissioner's decision." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

     A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Both the "impairment" and the "inability" must be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

**Legal analysis**

At step 2, the issue is whether Plaintiff has shown that he has a condition which has more than "a minimal effect on her ability to:  walk, stand, sit, lift, push, pull, reach, carry, or handle, etc."  Flynn v. Heckler, 768 F.2d 1273, 1275 (11th Cir. 1985) (relying on 20 C.F.R. § 404.1521).  "In other words, the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).  "[I]n order for an impairment to be non-severe, 'it [must be] a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.' "  Parker v. Bowen, 793 F.2d 1177, 1181 (11th Cir. 1986), citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984), Edwards v. Heckler, 736 F.2d 625, 630 (11th Cir. 1984), and Flynn, 768 F.2d at 1274.[1]

---

[1] "Step two is a threshold inquiry.  It allows only claims based on the most trivial impairments to be rejected.  The claimant's burden at step two is mild."  McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986) (clarifying Brady).  A "severe impairment" is a "de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working."  Stratton v. Bowen, 827 F.2d 1447, 1452 n. 9 (11th Cir. 1987), quoting Baeder v. Heckler, 768 F.2d 547, 551 (3d Cir. 1985).  It also has been characterized by the Supreme Court as a criterion which identifies "at an early stage those claimants whose medical impairments are so *slight* that it is unlikely they would be found to be disabled even if their age, education and experience were taken into consideration."  Stratton, 827 F.2d at 1452 n. 9 (emphasis

An erroneous finding as to "severe" impairments at step 2 may improperly foreclose a claimant's "ability to demonstrate the merits of her claim for disability with respect to her former work activities." Flynn, 768 F.2d at 1275. Impairments must be evaluated in combination at all stages of the analysis. 20 C.F.R. §§ 404.1523 and 416.923; Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990); Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). Impairments must be evaluated in combination even though some impairments are not severe. Hudson v. Heckler, 755 F.2d 781, 785 and n. 2 (11th Cir. 1985). The Eleventh Circuit has "repeatedly held that an ALJ must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled."[2] Davis v. Shalala, 985 F.2d at 534.

The medical evidence shows that on March 27, 2002, Plaintiff had back surgery at the L4-L5 and L5-S1 levels. R. 208. On November 16, 2004, Plaintiff was seen at the Alachua General Hospital emergency room complaining of lower back pain. R. 309. Some diffuse lumbar paravertebral tenderness with spasm was noted. *Id*. He was treated and his pain improved. *Id*. It was noted that he needed referral for chronic pain

---

by the court), *quoting* Bowen v. Yuckert, 482 U.S. 137, 153, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987).

[2] On the other hand, even if there is error at step 2, a remand is not needed if the error is harmless because the ALJ considered the limiting effects of the impairment at each succeeding step, along with other impairments. Riepen v. Commissioner of Social Sec., 198 Fed.Appx. 414, 415 (6th Cir. Oct 10, 2006) (not selected for publication in the Federal Reporter, No. 05-2407); Reed-Goss v. Astrue, 291 Fed.Appx. 100, 101 (9th Cir. Aug 25, 2008) (not selected for publication in the Federal Reporter, No. 07-35477); Newton v. Astrue, 2008 WL 915923, *10 (N.D. Ga. Apr 01, 2008) (No. CIV.A.1:06CV1542AJB).

medication and an MRI.  *Id*.  The diagnosis was a herniated disc and chronic back pain.  *Id*.

On August 8, 2006, Plaintiff was examined at the Shands University of Florida Clinic.  R. 360.  It was related there that Plaintiff had a recurrence of pain about six months after his surgery in 2002.  *Id*.  The physician wrote that his pain had gradually increased until he could no longer work.  *Id*.  The diagnosis after review of an MRI was low back pain of a type that cannot be cured with surgery and neurogenic claudication secondary to possible lumbar stenosis.  *Id*.  A CT myelogram, however, was ordered to evaluate whether surgery was indicated.  *Id*.  On September 14, 2006, as a result of a diagnosis of L3-L4 stenosis,[3] Plaintiff underwent a second operation.  R. 354.  After the surgery, it was noted by Plaintiff's treating physician that he still had "what appears to be neuropathic pain."  R. 353.  Neurontin[4] with Percocet[5] was prescribed.  *Id*.

At the second administrative hearing, Plaintiff testified that he had shoulder pain and constant low back pain.  R. 464.  He said he could sit for only 5 to 10 minutes at a time without having to get up and move.  *Id*.  He said that he could stand for the same

---

[3] Stenosis is an abnormal narrowing of a duct or canal.  DORLAND'S MEDICAL DICTIONARY FOR HEALTH CONSUMERS.

[4] Neurontin has two uses.  First, it may be prescribed with other medications to treat partial seizures (the type in which symptoms are limited).  It can be used whether or not the seizures eventually become general and result in loss of consciousness.  Second, it can be used to relieve the burning nerve pain that sometimes persists for months or even years after an attack of shingles (herpes zoster).  PDRhealth™, PHYSICIANS DESKTOP REFERENCE.

[5] Percocet, a narcotic analgesic, is used to treat moderate to moderately severe pain.  It contains two drugs – acetaminophen and oxycodone.  Acetaminophen is used to reduce both pain and fever.  Oxycodone, a narcotic analgesic, is used for its calming effect and for pain.  PDRhealth™, PHYSICIANS DESKTOP REFERENCE.

period of time, after which he had to bend over for 10 to 15 minutes to stretch his back. *Id.*

The Administrative Law Judge determined that Plaintiff's "medically determinable mental impairment of a pain disorder does not cause more than minimal limitations in the claimant's ability to perform basic mental work activities and is therefore non-severe." R. 22. In reaching this conclusion, the ALJ considered the four broad functional areas set out in section 12.00C for mental impairments: activities of daily living; social functioning; concentration, persistence, and pace; and episodes of decompensation.[6]

The ALJ found that Plaintiff has no limitation in activities of daily living from a mental impairment perspective. R. 22. He found that:

> [Plaintiff] can care for his personal needs, prepare light meals, handle money and write checks if needed, read, keep up with the news, go to church, and participate in chorus. He is able to take public transportation, handle light housework, and go grocery shopping. . . . Although his driver's license was suspended, he was requesting help from one of his treating physicians in regaining it, suggestive that he would drive if he had a license.

R. 22. The ALJ pointed out that while Plaintiff claimed to be very limited in his activities of daily living, in September, 2003, he reported leg cramps "after a long hard day at

---

[6] Listing 12.00C provides in part:

> C. *Assessment of severity.* We measure severity according to the functional limitations imposed by your medically determinable mental impairment(s). We assess functional limitations using the four criteria in paragraph B of the listings: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. . . .

Case No. 1:08cv165-MP/WCS

work," in January, 2005, he reported ear pain "after doing some heavy work outside," and in November, 2005, he reported that he was "able to continue fishing." *Id.*

These findings are supported by substantial evidence in the record. On December 18, 2003, Plaintiff reported that he is stiff in the morning, fixes himself some cereal, and while his wife does most of the shopping as she has "always done it," he can handle money, write checks, and spent most of his time reading. R. 185. He went to church regularly, had no problem getting along with others, joked at times, and was friendly. *Id.* On May 28, 2004, he said he was in the chorus when his back allows it. R. 175. On September 23, 2004, Plaintiff said he had leg cramps "after a long hard day at work." R. 238. On January 19, 2005, Plaintiff reported that he had done "some heavy work outside" and had ear pain and "sweated a lot." R. 335. On November 8, 2005, he reported that his pain had improved, though it was persistent, and although he was unable to put his shoes on due to swelling, he was able to continue fishing. R. 327. On October 17, 2006, Plaintiff asked for a physician to state that he was unable to work (and could not pay child support)[7] so that he could "regain his driver's license." R. 353. Moreover, Dr. Legum, the psychologist who examined and tested Plaintiff on a consultative basis on May 18, 2006, said:

> Based on his history and then his testing, there is strong evidence that he is magnifying his situation. While he has some ongoing depression relative to his pain, all of the other indicators show that he is malingering in terms of his overall abilities.

R. 347.

---

[7] It is judicially noted that a driver's license in Florida may be suspended for failing to pay child support.

Case No. 1:08cv165-MP/WCS

The next area considered by the ALJ was social functioning, and there, the ALJ found that Plaintiff had mild limitation. R. 23. The ALJ found that Plaintiff was active in church and chorus. *Id.* This is supported by the evidence noted above. He found that Plaintiff had said that "he got along very well with friends, family, and the general public," though he did not like to be around people in authority. *Id.* This is supported by statements made by Plaintiff on May 28, 2004. R. 176. The ALJ noted that Plaintiff had joked with the examiner and was very friendly. R. 23. This is supported by evidence cited above. The consulting psychologist, Dr. Legum, found that Plaintiff was "okay in crowds, though observant." *Id.* This is supported by the record. R. 346. The ALJ noted that Dr. Chodosh had said that Plaintiff was friendly, compliant, capable of communicating appropriately, acted in his own interest, and was sociable. R. 23. This is supported by substantial evidence in the record. R. 185. It was also noted there that Plaintiff had never been diagnosed with having depression, was not receiving medications for depression, and had never been referred for treatment for depression. *Id.* In summary, the ALJ's conclusion that Plaintiff has only mild limitations in social functioning is supported by substantial evidence in the record.

The third area considered was concentration, persistence, and pace. R. 23. Again, only a mild limitation was found. *Id.* This is supported by substantial evidence in the record. The ALJ noted that in the questionnaire that Plaintiff completed on May 28, 2004, Plaintiff said he could remember recent and remote events, concentrate on what he did, follow instructions, and deal with deadlines and schedules. *Id.* This is supported by substantial evidence in the record. R. 176. The ALJ said that Dr. Williams, a nonexamining state agency physician, had assessed a mild limitation in

concentration due to mild daytime cognitive insufficiency caused by sleep loss due to sleep apnea. R. 23. This is supported by substantial evidence in the record. R. 286.

The fourth area considered is periods of decompensation. R. 23. The ALJ found that Plaintiff has not experienced periods of decompensation. *Id.* This is true. Plaintiff has not pointed to any evidence of treatment for an acute phase of any mental impairment.

**Conclusion**

In summary, the ALJ's determination at step 2 that Plaintiff does not suffer from a "severe" "mental impairment of a pain disorder" is supported by substantial evidence in the record. The findings of the Administrative Law Judge correctly followed the law and were based upon substantial evidence in the record. The decision of the Commissioner to deny Plaintiff's application for benefits should be affirmed.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED**.

**IN CHAMBERS** at Tallahassee, Florida, on May 18, 2009.

s/ William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

Case No. 1:08cv165-MP/WCS